CASSIE SMITH V. THE STATE.

No. 16926. Delivered October 10, 1934.
Rehearing Denied November 7, 1934.
Reported in 75 S. W. (2d) 449.

The opinion states the case.

*Jno. E. Taylor, Cecil Storey,* and *Shead & Smith,* all of Longview, and *Long & Strong,* of Carthage, for appellant.

*Lloyd W. Davidson,* State's Atty., of Austin, and *M. L. Molhusen,* Criminal Dist. Otty, of Longview, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment assessed at confinement in the State penitentiary for a term of five years.

The record discloses that on the 29th day of August, 1933, Billie Atwood was found dead near the building of the Mayfield Grocery Company between two railroad switch tracks in the town of Longview, Texas. His wife, Ruth Atwood, and the appellant were both indicted and charged with the murder. Mrs. Atwood was tried in September, 1933, convicted and sentenced to serve a term of five years in the penitentiary. The appellant was subsequently tried in March, 1934, and convicted. The State relied alone for a conviction upon the testimony of Ruth Atwood and a negro woman by the name of Emma Samples.

The appellant's first and main contention is that the State's evidence is wholly insufficient to warrant and sustain his conviction. In order to determine this question we deem it necessary to set forth the substance of the State's testimony. Ruth Atwood, the wife of deceased, testified in substance that she and Billie Atwood were married on the 18th day of August, 1933, in the state of Louisiana; that they came to Longview and lived at the Como Hotel; that on the night of August 28th, while she was sitting on the porch of the hotel, the appellant came and asked her to go over to the Santa Fe Shops with him; that she declined to do so, whereupon he drew a pistol and threatened to shoot her unless she complied with his request; that she became frightened at his threat and started with him to the shops, but before reaching the same and after having crossed some of the railroad tracks, she declined to go any further and told the appellant he could kill her if he wanted to, that she was not going to the shops with him; that appellant had his car parked near there and he suggested that they go to his car and sit down so he could talk to her; that they walked over to the car, sat down on the running board, and talked; that while they were sitting there, Billie Atwood came up and said, "Ruth, what are you doing here?"; that appellant immediately jumped up, took an iron bar from his car, and struck Atwood, down; that after he, Atwood, had fallen, he, the appellant, struck him a second blow and when it appeared that Atwood was dead he, appellant, said, "We have to move the body as it is too close to my work"; that appellant took hold of the body by the shoulders and pushed it up on the fender and running board on the driver's side; that she took hold of his feet and laid them on the running board of the car, and then they

both got into the car, drove across town near to the building of the Mayfield Grocery Company and dumped the body between two switch tracks; that they then went to the home of Emma Samples and while there the appellant discarded his blue shirt as it was bloody and she discarded her dress because it had blood on it and she asked Emma Samples to wash it; that the negro woman gave her, Mrs. Atwood, one of her dresses to wear back to her room at the hotel. The appellant also left his shirt to be washed. The appellant then carried her (Mrs. Atwood) back to the Como Hotel from where he went back toward the Santa Fe shops. About 5 A. M. Mrs. Atwood carried Emma Sample's dress back home and got her dress, which she took to her room where she pressed it; that some time in the forenoon the appellant appeared at the Como Hotel and she and the appellant went to Louisiana to see the Justice of the Peace who had performed her marriage ceremony for the purpose of urging him not to have the marriage license with the return thereon recorded in case he had not already done so. On their return to Longview, Texas, that afternoon she was arrested and placed in jail and subsequently indicted for the murder of Billie Atwood. Upon her trial she testified, denying any complicity therein as well as any knowledge of who did it. The negro woman, Emma Samples, also testified at the trial of Mrs. Atwood and denied having any knowledge of who committed the act, but upon the trial of the appellant she testified that the appellant and Mrs. Atwood appeared at her home about 3 A. M. on August 29, 1933, knocked on the window screen and asked to be admitted; that she opened the door and they entered; that Mrs. Atwood cried and said, "I did not do it Emma, you know I did not do it," whereupon she asked her, "Do what," to which Mrs. Atwood replied, "Red (meaning appellant) killed Billie Atwood." She further testified that Mrs. Atwood had blood on her dress and the appellant had blood on his shirt; that Mrs. Atwood discarded her dress and she loaned Mrs. Atwood a dress to wear back to her room while she washed the bloody dress; that appellant left his blue shirt with the request that she wash it, which she did, and then put it under the mattress of her bed and later when he did not come for it she burned and destroyed the evidence; that by doing so she thought she would hide the crime and would keep them from finding out who did it, but that at the time she did so she did not know she was helping to hide the crime. She further testified that she had seen the appellant many times since then and that he always told her to be on her P's and Q's and never to mention

his name; that she had been on her P's and Q's ever since said time and for that reason never told anyone of what she knew. The appellant denied that he had any connection with the murder of Atwood or any knowledge thereof until after he heard of it; the appellant relied upon an alibi which he established by the testimony of numerous witnesses and he also proved by a great number of witnesses a good reputation as a law abiding citizen.

That Mrs. Atwood, under her own testimony, was an accomplice s not even a debatable question, and it is our opinion that the witness Emma Samples by her testimony brings herself into the category of an accomplice. If her testimony be true, she was informed by Mrs. Atwood that appellant had killed Mr. Atwood; that she saw blood on Mrs. Atwoods' dress and on appellant's shirt. She washed the garments of both parties. She hid the appellant's shirt under the mattress of her bed and when after the trial of Mrs. Atwood the appellant did not come for his shirt she burned it to hide the crime and destroy the evidence, and did not reveal any of the facts upon the trial of Mrs. Ruth Atwood connecting either Mrs. Atwood or the appellant with the crime and she did not make known any of the facts to which she testified upon the trial of the appellant until Mrs. Atwood had been convicted and was serving her term in the penitentiary, but gave false testimony. The testimony given by Emma Samples to which reference is made above is deemed such as to characterize her as an accomplice witness as a matter of law. See article 77, Penal Code, which defines an accessory as follows: "An accessory is one who, knowing that an offense has been committed, conceals the offender, or gives him any other aid in order that he may evade an arrest or trial or the execution of his sentence." We do not deem it necessary to enter upon an elaborate discussion of the subject inasmuch as the same has been passed upon by this court in the case of Largent v. State, 32 S. W. (2d) 652; Blakely v. State, 24 Texas Cr. App., 616; 7 S. W., 233; Littles v. State, 111 Texas Crim. Rep., 500.

It is well settled that a conviction can not be had upon the uncorroborated testimony of two or more accomplices. One accomplice can not corroborate himself, neither can one accomplice corroborate another accomplice, and in support of this proposition we refer to the following authorities: Heath v. State, 7 Texas App., 464; Gonzales v. State, 9 Texas App., 374; Phillips v. State, 17 Texas App., 169. We have searched the record in vain for some testimony which tended to corroborate

the accomplices but fail to find any, and in the absence of any corroboration the conviction can not legally stand. Therefore, the judgment of the trial court is reversed and the cause remanded. .

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Our former opinion in this case was handed down on the 10th day of October, 1934. Under the well settled rules of this court motions for rehearing must be filed within fifteen days thereafter, or some good and satisfactory reason shown why this is not done. The State brings forward a motion for rehearing which appears to have been mailed in Longview, Texas, on October 26th, and which was received in the office of the clerk of this court on the morning of October 27th. We are unwilling to make one rule apply to the defendant and a different rule to the State.

The motion for rehearing was filed too late, and it is accordingly overruled.

*Overruled.*